UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

E.H., individually and on behalf of M.K.,

Plaintiff,

v.

NEW YORK CITY DEPARTMENT OF EDUCATION,

Defendant.

MEMORANDUM DECISION AND ORDER

12-CV-6639 (GBD)

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: MAR 21 2014

GEORGE B. DANIELS, District Judge:

Parent E.H. ("Plaintiff") commenced this action to seek a reversal of the New York State Department of Education's State Review Officer's ("SRO") decision, pursuant to the Individuals with Disabilities Education Improvement Act ("IDEA") 20 U.S.C. § 1400, et seq., that Plaintiff's son (the "Student") was not entitled to tuition funding for a private school because the New York City Department of Education ("DOE" or the "Defendant") offered a free appropriate public education ("FAPE") for the 2011-2012 school year. In so deciding, the SRO reversed the Impartial Hearing Officer (the "IHO")'s decision that Defendant failed to offer a FAPE to the Student and that Plaintiff was entitled to a reimbursement of tuition costs at a private school.

Defendant moved for summary judgment that Plaintiff is not entitled to reimbursement of private school tuition costs for the Student (ECF 12). Plaintiff cross-moved for summary judgment awarding reimbursement (ECF 17). Defendant's motion for summary judgment is GRANTED. Plaintiff's cross-motion for summary judgment is DENIED.

# I. BACKGROUND

## A. M.K.'s Early Childhood Classification as Learning Disabled

Plaintiff's son, M.K., is a child with a disability as defined under IDEA. (Def.'s Statement Pursuant to Local Rule 56.1 (Def.'s 56.1 Stmt.) ¶ 2; Pl.'s Local Civil Rule 56.1 Statement of Material Facts not in Dispute ("Pl.'s 56.1 Stmt.") ¶ 1.) Specifically, M.K. has autism and displays language delays, attention deficits, and behavioral and adaptive skill deficiencies. (Def.'s 56.1 Stmt. ¶ 3.) The DOE is responsible for providing a FAPE to New York City children with disabilities. (Def.'s 56.1 Stmt. ¶ 4; Pl.'s 56.1 Stmt. ¶ 2.) M.K. has attended the Rebecca School, a private school that specializes in education for autistic children, since September 2009. (Def.'s 56.1 Stmt. ¶¶ 5, 29.)

## B. Evaluation of M.K. during the 2010-2011 School Year

On February 14, 2011, pursuant to the IDEA, a Committee on Special Education ("CSE") met and developed an Individualized Education Program ("IEP") for M.K. with an initiation date of July 1, 2011. (Def.'s 56.1 Stmt. ¶ 6-7; Pl.'s 56.1 Stmt. ¶¶ 3, 12-13.) The CSE included a district representative and special education teacher; a school psychologist; Plaintiff; a parent member of the CSE; a social worker at the Rebecca School; the Student's teacher at the Rebecca School for the 2010-2011 school year; and a representative from Plaintiff's counsel's office. (Def.'s 56.1 Stmt. ¶ 8; Pl.'s Response to Def's 56.1 Stmt. ¶ 8.). The CSE considered several documents, including M.K.'s prior IEP, a classroom observation of M.K. conducted on November 8, 2010, a Neuropsychological Evaluation dated July 9, 2009, and progress reports from the Rebecca School dated December 2010. (Def.'s 56.1 Stmt. ¶ 10.) The Rebecca School utilizes a "DIR Floortime" methodology, which "focuses on what is motivating to the individual child," and, *inter alia*, group activities, occupational therapy, and speech therapy, to implement M.K.s goals. (Pl.'s 56.1 Stmt. ¶ 23.)

The CSE also considered M.K.'s behavioral functioning and needs, and conducted an informal Functional Behavior Assessment ("FBA") (Def.'s 56.1 Stmt. ¶ 11; Pl.'s 56.1 Stmt. ¶ 15). The CSE then developed a Behavioral Intervention Plan ("BIP"). (Def.'s 56.1 Stmt. ¶ 11.)

The CSE recommended a twelve-month, extended school year in a special class in a specialized school with a 6:1:1 classroom ratio, speech and language therapy (one-to-one for thirty minutes, four times per week), occupational therapy (one-to-one for thirty minutes, four times per week, and two-to-one for thirty minutes once per week), individual counseling (for thirty minutes per week), and a one-to-one crisis management paraprofessional. (Def.'s 56.1 Stmt. ¶¶ 12-13.) The IEP also consisted of goals to improve M.K.'s behavioral challenges, as well as academic goals to improve M.K.'s reading, math, sensory information, motor planning, sequencing skills, visual-spatial skills, engagement, pragmatic language skills, receptive language skills, expressive language skills, oral motor skills, regulation, communication, interactions with peers and daily living skills. (Def.'s 56.1 Stmt. ¶¶ 15-16.) E.H. and M.K.'s teacher at the Rebecca school reviewed and modified these goals, and in response, the CSE added a goal to address "Activities of Daily Living." (Def.'s 56.1 Stmt. ¶¶ 18-19.)

On June 13, 2011 in a Final Notice of Recommendation ("FNR"), the Department of Education offered M.K. a 2011-2012 placement in a 6:1:1 class at specialized school P176X@P153X. (Def.'s 56.1 Stmt. ¶ 20). On June 7, 2011, prior to receiving the FNR, Plaintiff enrolled the Student at the Rebecca School. (Def.'s 56.1 Stmt. ¶ 29). On June 27, 2011, Plaintiff notified the CSE that the Student would attend the Rebecca School for the 2011-2012 school year. (Def.'s 56.1 Stmt. ¶ 30). The special education teacher at P176X that would have taught the Student testified that her class would have been an appropriate placement for M.K. and that she would have implemented his academic and social emotional goals, and that the school would provide related services. (Def.'s 56.1 Stmt. ¶¶ 22-28.)

### C. <u>The Due Process Complaint and Administrative Review of the IEP and the Private Placement</u>

On June 27, 2011, Plaintiff filed a Due Process Complaint (the "DPC") requesting an impartial hearing for the DOE to fund M.K.'s tuition at the Rebecca School (Def.'s 56.1 Stmt. ¶ 35; Pl.'s 56.1 Stmt. ¶¶ 5, 31). Plaintiff alleged that the IEP "was not reasonably calculated to confer educational benefit upon [the student]." (Pl.'s Response to Def.'s 56.1 Stmt. ¶ 36), that the IEP was inappropriate, that it did not comport with professional recommendations, and that an appropriate program was not recommended in a timely period. (Pl.'s 56.1 Stmt. ¶ 32.) Plaintiff requested, *inter alia*, that the IHO find that the CSE failed to offer M.K. a FAPE; that the CSE failed to offer an appropriate program; that the parents selected an appropriate program; and that they are entitled to reimbursement. (Pl.'s 56.1 Stmt. ¶ 33.) Plaintiff put forth testimony that the Rebecca School's classroom staff appropriately meets M.K.'s behavioral and educational needs through its DIR Floortime methodology. (Pl.'s 56.1 Stmt. ¶ 34.) According to the defendant, PS176X had the resources to implement the IEP goals and that the DIR Floortime methodology was not a necessary method. (Defendant's Memorandum of Law in Opposition to Plaintiff's Cross-Motion for Summary Judgment and Reply in Further Support of Defendant's Motion for Summary Judgment at 4). Defendant also notes that the Complaint did not reference problems with the FBA or the BIP, or acknowledge the proposed placement at P176X or demonstrate that it could not accommodate M.K.'s IEP due to its methodology. (Def.'s 56.1 Stmt. ¶ 36; Defendant's Memorandum of Law in Opposition to Plaintiff's Cross-Motion for Summary Judgment and Reply in Further Support of Defendant's Motion for Summary Judgment at 16.) An impartial hearing was held over three dates from November 28, 2011 through January 19, 201[2]. (Def.'s 56.1 Stmt. ¶ 37; Pl.'s 56.1 Stmt. ¶ 6.)

D. **The Impartial Hearing Officer's Decision**

On February 28, 2012, the IHO found that: (i) the DOE had failed to provide M.K. with a FAPE; (ii) the Rebecca School was an appropriate placement; and (iii) equitable considerations support an award of tuition to Plaintiff (IHO Officer's Findings of Fact and Decision at 16). Specifically, the DOE failed to provide M.K. a FAPE because (i) the DOE school used a different teaching methodology than the Rebecca School, and the goals in the IEP were intended for the Rebecca School methodology, (ii) the CSE did not conduct a formal FBA, (iii) the BIP in the IEP was inadequate, and (iv) there was not an available seat in the DOE school. (Def.'s 56.1 Stmt. ¶ 39; Pl.'s 56.1 Stmt. ¶ 36.) On April 3, 2012, the DOE appealed to the New York State Education Department's Office of State Review. (Def.'s 56.1 Stmt. ¶¶ 40-41; Pl.'s 56.1 Stmt. ¶ 8.)

E. **The State Review Officer's Decision**

The SRO overturned the IHO's finding and concluded that the DOE offered the Student a FAPE (SRO Decision at 18). The SRO noted that in determining that Defendant failed to offer the Student a FAPE, the IHO addressed issues that were not raised in Plaintiff's due process complaint. (*Id.* at 7). The SRO further found that "the February 2011 CSE had sufficient information relative to the student's present levels of academic achievement and functional performance at the time of the CSE meeting to develop an IEP that accurately reflected the student's special education needs." (*Id.* at 14). The SRO also concluded that the IEP was reasonably calculated to enable the student to receive educational benefits. (*Id.* at 18). Having decided that Defendant offered the Student a FAPE, the SRO did not consider whether the Rebecca School was an appropriate placement for M.K., or determine that the Plaintiff should be reimbursed. (*Id.* at 18).

## II. LEGAL STANDARD

This Court must determine whether the SRO's decision is supported by "'the preponderance of the evidence,' taking into account not only the record from the administrative proceedings, but also any further evidence presented before the District Court by the parties." *Grim v. Rhinebeck Cent. Sch. Dist.*, 346 F.3d 377, 380 (2d Cir.2003); *see also M.S. ex rel. S.S. v. Bd. of Educ. of the City Sch. Dist. of Yonkers,* 231 F.3d 96, 102 (2d Cir.2000), *abrogated on other grounds by Schaffer ex rel. Schaffer v. Weast,* 546 U.S. 49, 57–58, 126 S.Ct. 528, 163 L.Ed.2d 387 (2005). The IDEA's statutory scheme "requires substantial deference to state administrative bodies on matters of educational policy." *Cerra v. Pawling Cent. Sch. Dist.*, 427 F.3d 186, 191 (2d Cir.2005) (citing *Rowley,* 458 U.S. at 205–08, 102 S.Ct. 3034). This Court "must defer to the SRO's decision on matters requiring educational expertise unless it concludes that the decision was inadequately reasoned, in which case a better-reasoned IHO opinion may be considered instead." *R.E.v. New York City Dep't of Educ.*, 694 F. 3d 167, 189 (2d Cir. 2012); *see also Newington,* 546 F.3d at 118 ("'Deference is particularly appropriate when the state hearing officers' review has been thorough and careful.' " (quoting *Walczak,* 142 F.3d at 129) (internal ellipse omitted)). Furthermore, a court must defer to the SRO's determination even when the SRO's decision conflicts with the IHO's earlier decision because the SRO's decision "is the final decision of the state's authorities." *See M.C. v. Board of Educ. of Chappaqua Cent. Sch. Dist.*, 553 F. 3d 165, 171 (2d Cir. 2009). The party appealing an SRO's determination bears the burden of proof in establishing that the SRO's decision is not entitled to deference. *See M.H.*, 685 F.3d at 255 n.3.

## III. THE SRO'S DETERMINATION IS ENTITLED TO DEFERENCE

Plaintiff has not established that the SRO's determination is not entitled to deference. After an exhaustive review of the administrative record, the SRO determined that the CSE formulated an appropriate IEP for the Student. Coupled with the public school placement offered to him, it conformed

to the procedural requirements of the IDEA, and was reasonably calculated to enable the Student to receive educational benefits and provided the Student a FAPE. The record shows that the SRO's decision was thorough and well-reasoned, and included a review of the Student's performance levels, the underlying data used at the February 14, 2011 CSE meeting, and the ways that the CSE addressed the Student's needs. (Pl. Ex. G; DOE Ex. 2; Pl. Ex. F; DOE Ex. 6; DOE Ex. 4; SRO Decl. at 13, 14). The SRO then considered whether the Student was denied a FAPE either because the CSE convened in February instead of later in the school year, or because the Student met only nine of the forty short-term objectives in the February IEP. The SRO concluded that the student was not denied a FAPE, after a review of the remaining goals and short-term objectives formulated to address the student's needs. (SRO Decl. at 17).

Plaintiff argues that the SRO's decision was flawed because the SRO failed to address (i) the lack of a FBA; (ii) the accuracy or adequacy of the BIP; (iii) the methodology used to implement the IEP goals; and (iv) whether the proposed classroom had a placement spot for the Student.

However, the record shows that the SRO did address each of these issues. First, the SRO found that an informal FBA of the Student was done prior to the formulation of the BIP. Second, the SRO determined that the IHO improperly reached the question of whether the BIP was adequate because that issue had not been raised in the DPC or put at issue during the impartial hearing. (SRO Decision at 7). Third, the SRO described the Student's behavioral challenges and how the IEP addressed those issues. (SRO Decision at 14). Finally, the SRO addressed whether DOE's proposed placement had a seat available for the Student, stating that "with respect to the IHO's finding that there was no seat available for the student in the assigned school ... I note that ... the IDEA does not require districts to maintain classroom openings for students enrolled in private schools." (SRO Decl. at 7 n.7).

## IV. DEFENDANT PROVIDED THE STUDENT WITH FREE APPROPRIATE PUBLIC EDUCATION

Under the *Burlington/Carter* test, a board of education is required to pay for the program selected by a parent only if: (l) the educational program recommended by the board of education was inadequate or inappropriate; (2) the program selected by the parent was appropriate, such that the private program meets the student's special education needs; and (3) the equities support the parent's claim. *Florence Cnty. Sch. Dist. Four v. Carter,* 510 U.S. 7 (1993); *Sch. Comm. of Town of Burlington v. Dep't of Educ.*, 471 U.S. 359 (1985). Plaintiff can establish that the DOE's plan was inadequate or inappropriate—and thus did not afford the Student a FAPE—by establishing either (1) that the state did not comply with the procedural requirements of IDEA; or (2) that the challenged IEP was not "reasonably calculated to enable the child to receive educational benefits." *Rowley*, 458 U.S. at 206-207; *Walczak v. Florida Union Free Sch. Dist.*, 142 F.3d 119, 129 (2d Cir. 1998). Only if Plaintiff proves that the IEP confers no educational benefit will this Court need to consider the other *Burlington* factors. *M.C. v. Voluntown Bd. Of Educ.*, 226 F.3d 60, 66 (2d Cir. 2000).

### A. <u>DOE Complied with the Procedural Requirements of the Act</u>

Under the IDEA, a denial of a FAPE occurs only when procedural inadequacies (i) impede the student's right to a FAPE, (ii) significantly impede the parents' opportunity to participate in the decision-making process regarding the provision of a FAPE to the student, or (iii) cause a deprivation of educational benefits. 20 U.S.C. § 1415(F)(3)(e)(ii). Thus, to constitute a denial of a FAPE, procedural inadequacies must "individually or cumulatively result in the loss of educational opportunity or seriously infringe on a parent's participation in the creation or formulation of the IEP." W.*S. ex rel. C.S. v. Rye City Sch. Dist.*, 454 F. Supp. 2d 134, 138 (S.D.N.Y. 2006). Here, the record reflects that DOE developed an IEP that was reasonably calculated to confer an educational benefit, while complying with the statute's procedural safeguards.

Plaintiff alleges that the DOE failed to comply with the procedural requirements of the Act in various ways, including: (i) the CSE's failure to conduct an FBA; (ii) inaccurate descriptions of the Student's behaviors in the BIP; (iii) the use of a December 2010 report to prepare goals that were to be used for the school year beginning in July 2011; (iv) the IEP's adoption of goals from the Rebecca School progress report, which were written for a specific methodology that the IEP and the proposed placement were not going to implement; (v) the classroom paraprofessional's lack of training to implement the Student's IEP goals; and (vi) the CSE's change of the Student's related services "without any reason." (Compl. ¶ 25). The record does not establish that any of these deviations impeded the Student's right to a FAPE, significantly impeded Plaintiff's opportunity to participate in the decision-making process, or deprived the Student of educational benefits.

First, the informal FBA did not violate the procedural requirements of the Act. The CSE's reliance on classroom observation of the Student by a DOE psychologist, the input of his classroom teacher about the nature and cause of his disruptive behaviors and information from Plaintiff is consistent with the requirements of New York regulations governing FBAs. *See* 8 NYCRR § 200.22 ("The FBA shall, as appropriate, be based on multiple sources of data including, but not limited to, information obtained from direct observation of the student, information from the student, the student's teacher(s) and/or related service provider(s), a review of available data and information from the student's record and other sources including any relevant information provided by the student's parent. The FBA shall not be based solely on the student's history of presenting problem behaviors.")

Second, because Plaintiff failed to raise the adequacy of the BIP in the DPC, the issue was not properly before the IHO and thus is not properly before this Court. Furthermore, the record shows that the BIP described the Student's interfering behaviors as they were known and understood at the time of the IEP meeting.

Furthermore, the use of a December 2010 progress report from the Rebecca School, where the Student was enrolled, and observed daily, at the time of the CSE meeting was not unreasonable and did not violate the procedural requirements of the Act.

Similarly, the adoption of the Rebecca School floortime methodology in the IEP did not violate the procedural requirements of the Act. After reviewing the development and content of the February 14, 2011 IEP, the SRO determined that it was reasonably calculated to confer a substantial education benefit on the Student, and was thus an appropriate IEP. (SRO Decision at 17). Because the DOE's recommended program, as a whole, was appropriate and fulfilled the requirements of the Act, the Student was not denied a FAPE. *See W.S. v. Rye City Sch. Dist.*, 454 F. Supp. 2d 134, 146-47 (S.D.N.Y. 2006) (upholding adequacy of IEP as a whole, despite goal statements being overly broad). Furthermore, Plaintiff's participation in the development and modification of the goals to be placed on the IEP (SRO Dec. at 17; see Tr.41, 55-57, 68-72; DOE Ex. 6) belies any argument that Plaintiff was denied an opportunity to participate in the decision-making process regarding the provision of a FAPE to the Student. Finally, if Plaintiff later determined that the February 14, 2011 IEP was no longer adequate to meet the Student's needs by July 2011, she should have sought a remedy within the IDEA instead of unilaterally placing the student in private school.

Moreover, Plaintiff's argument that the classroom paraprofessional lacked training to implement the Student's IEP goals is contradicted by the evidence on the record that the Student's IEP could have been implemented at P176X. Specifically, a DOE teacher at P176X, who would have been the Student's teacher had he enrolled there, testified about how she would have implemented the goals outlined in the IEP. (Tr. 96-107; 111-14).

Plaintiff's argument that the IEP was defective due to the change of the Student's related services "without any reason" is also without merit. (Compl. ¶ 25). Plaintiff argues that there was no

reason for the new IEP's addition of a fifth occupational therapy session per week, or for the modification of the Student's speech therapy, which requires that the fourth weekly session is in a group of two, whereas it had been in a larger group at the Rebecca School. (Pl.'s Memorandum of Law in Support of Cross-Motion for Summary Judgment at 21-22). These alterations in the IEP do not constitute a denial of a FAPE, as the IEP would continue to provide the student with "related services" on a more frequent basis, and it was "reasonably calculated" based on the documentation and evaluation procedure utilized in the CSE meeting. 20 U.S.C. § 1401(9); Rowley, 458 U.S. at 207. Furthermore, as required by IDEA § 300.501, Plaintiff was provided a meaningful opportunity to participate in the development of the IEP. In fact, both Plaintiff and Rebecca School Staff participated in the CSE meeting where the aforementioned service plan modifications were developed based on the performance of the student, the July 2009 neuropsychological consultation report, a November 2010 classroom observation, and a December 2010 Rebecca School interdisciplinary report of progress. (Defendant's Memorandum of Law in Support of Defendant's Motion for Summary Judgment at 10). The SRO found that this was an adequate amount of evaluative information to develop the new IEP. *Id.*

**B. <u>The February IEP was Substantially Adequate</u>**

"Because administrative agencies have special expertise in making judgments concerning student progress, deference is particularly important when assessing an IEP's substantive adequacy." *Id.* (quoting *Cerra v. Pawling Cent. Sch. Dist.*, 427 F. 3d 186, 195 (2d Cir. 2005)). The requirement that the IEP be "reasonably calculated" to provide educational benefits simply means that it must "provide [children with disabilities] with 'meaningful access' to education and must be 'likely to produce progress and not regression.'" *Frank G. v. Bd of Educ.*, 459 F.3d 356, 364 (2d Cir. 2006).

The SRO correctly determined that the February 2011 IEP was substantially adequate. Plaintiff's arguments that the plan was inadequate are without merit. In sum, the plan adequately

addressed the behaviors exhibited by the Student as of February 2011. Specifically, the minutes from the February 14, 2011 CSE meeting indicate that the issue of whether the Student bites was discussed, and according to the Student's then-current teacher, the Student was "not biting anymore," and that the Student's "aggressive behavior" had "decreased." (DOE Ex. 6). The implementation of a February IEP in July would not have rendered the plan inadequate. This Court defers to the SRO's determination, which is supported by the record, that "the remaining [31] goals and short term objectives in the February 14, 2011 IEP were sufficient to address the Student's demonstrated needs and were designed to enable him to make progress." (SRO Decision at 16).

Plaintiff's argument that the Student was denied a FAPE because the classroom did not have a space for him is similarly without merit. Plaintiff declined the DOE's offered placement prior to the start of the school year. The school was not obligated to hold the placement open after Plaintiff did so. Furthermore, the evidence in the record shows that a seat was available for the Student at the time Plaintiff filed the DPC.

Moreover, the use of the Rebecca School goals to write the IEP did not violate the Act. Finally, Plaintiff's arguments that the Applied Behavior Analysis model used in the classroom was not appropriate for the student, the children in that classroom were functionally very different from him, and there was no quiet room in the school where he was assigned are all without merit. These arguments are speculative because the Student never attended the DOE's offered placement. Moreover, the evidence on the record, including testimony by the DOE teacher that would have been the Student's teacher, that the Student would have been appropriately grouped in her class belies this argument. (Tr. 98, 101, 124).

The SRO correctly determined that the education plan offered by Defendant was adequate and appropriate. Because the program was adequate and appropriate, the second and third prong of the *Burlington/Carter* test need not be addressed.

## CONCLUSION

Defendant's motion for summary judgment that the Plaintiff is not entitled to reimbursement of private school tuition costs for the student is GRANTED. Plaintiff's cross-motion for summary judgment awarding reimbursement is DENIED.

Dated: March 21, 2014
New York, New York

SO ORDERED.

GEORGE B. DANIELS
UNITED STATES DISTRICT JUDGE